## Fordson Coal Company v. Bowling et al.

(Decided May 24, 1932.)

CLEON K. CALVERT for appellant.

J. M. BICKNELL for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

This is the second appeal of this case. In opinion on former appeal found in 238 Ky. 221, 37 S. W. (2d) 69, the case was not considered on the merits, but merely on a question of pleading; however, in disposing of that question, this court did determine some points of law pertinent to a decision of this appeal. Practically all essential facts are set out in the former opinion but for a clear understanding of the questions involved some reiteration is necessary.

The purpose of this action by the Fordson Coal Company against Ben Bowling and three others is to recover damages for timber cut and removed from land alleged to belong to the company and to restrain them from further trespassing on the land. The source of title of the coal company to the tract of land described in its petition is a patent or land grant issued to Justice Bowling and Elihu Pennington on April 20, 1849. The survey for this tract was made on May 27, 1848. For convenience, we shall hereafter refer to this tract as the Bowling-Pennington grant. On July 15, 1846, a patent or land grant issued to William Bowling for a 2,500-acre tract surveyed January 7, 1845. In 1918, Ben Bowling surveyed and patented a tract of 50 acres. All of these boundaries are situated on the waters of Rush creek in Leslie county. It is admitted that the beginning corner of the Bowling-Pennington grant and the forty-sixth corner of the William Bowling grant are coincident, a white oak being the recognized corner. The first 15 lines of the Bowling-Pennington grant and the forty-sixth to the sixtieth lines of the William Bowling grant are set out in parallel columns in brief for appellant, and which, for a better understanding of the questions involved, we copy from the brief:

"Bowling and Pennington Grant surveyed May 27, 1848,

    (1) N 4 W 21 poles to a maple;
    (2) N 62 E 25 poles to a beech;

(3) S 74 E 60 poles to a beech;
(4) N 54 E 62 poles to a beech;
(5) N 33 W 60 poles to a stake;
(6) N 54 — 16 poles to a stake;
(7) S 33 E 60 poles to a dogwood;
(8) N 54 E 62 poles to a dogwood;
(9) W 36 poles to a dogwood;
(10) N 22 E 102 poles to a hickory;
(11) W 200 poles to a stake;
(12) N 21 poles to a stake;
(13) E 200 poles to a beech;
(14) N 65 E 64 poles to a maple;
(15) E 280 poles to ............;

William Bowling Grant, surveyed January 7, 1845,

(46) N 4 W 21 poles to a maple;
(47) N 61 E 52 poles to a beech;
(48) S 74 E 60 poles to a beech;
(49) N 54 E 62 poles to a beech;
(50) N 33 W 60 poles to a stake;
(51) N 54 E 16 poles to a stake;
(52) S 33 E 60 poles to a dogwood and beech;
(53) N 54 E 62 poles to a dogwood;
(54) North 33 poles to a dogwood;
(55) N 22 E 102 poles to a hickory;
(56) West 200 poles to a stake;
(57) North 21 poles to a stake;
(58) East 200 poles to a beech;
(59) N 65 E 62 poles to a maple;
(60) N 15 E 20 poles to a beech."

It will be noted that, beginning at the white oak, the first corner in the Bowling-Pennington survey the calls in the two surveys are identical except in four instances, and it is admitted that the ninth call in the Bowling-Pennington survey should read as the fifty-fourth call in the William Bowling survey, and that, except for the difference between the second call in the Bowling-Pennington survey and the forty-seventh call in the William Bowling survey, the discrepancies are not material in so far as a decision of this appeal is concerned. As pointed out in the original opinion, when the Bowling-Pennington grant is located with the line of the second call as 25 poles, there is a space between it and the William Bowling survey, and the land claimed by Ben Bowling is in this space; but, if this line in the Bowling-Pennington survey is made to conform to the corresponding call in the William Bowling survey, then

there is no vacant space between the surveys, and the greater portion of the land claimed by Ben Bowling would be included in the boundary of the coal company.

By answer, the defendants, other than Ben Bowling, asserted that they made no claim of title to the land in controversy, and that in cutting the timber of which complaint was made in the petition they were acting under the direction and orders of Ben Bowling. Ben Bowling made issue as to the title of the coal company to the tract of land described in the petition, and denied that the patent under which plaintiff claimed title called for any line or corner of the William Bowling patent except as to the beginning and the first and in part the second line. He also denied that plaintiff was owner of the land on which the timber was cut, and in a second paragraph alleged that he was the owner and in possession of a tract of land therein described, and that all the timber cut, and of which complaint is made by plaintiff, stood within that boundary.

On final hearing it was adjudged that plaintiff's petition be dismissed, and that, in so far as its interests are concerned, Ben Bowling is the owner of the tract of land set up and described in his answer, and plaintiff has again appealed.

At the very outset of brief filed on behalf of appellees, we find it said:

"But, whether or not it may contribute to his undoing, the writer of this brief for appellees is convinced that in this case there is only one crucial issue, with some minor inferences. Is the distance of the second line of the Bowling-Pennington survey twenty-five (25) poles, or is it fifty-two poles?"

It is the theory of appellant that the surveyor in making the Bowling-Pennington survey intended to follow the lines of the William Bowling survey but by error in settling down the second line transposed and reversed the figures 52, thereby making it read 25.

In answer to this, counsel for appellees asserts that it is just as consistent to assume that in making the William Bowling survey the surveyor by transposition set down the figures 52 in giving the distance in the line in question when it should have been 25.

Appellees' counsel sets out three assumptions that may be indulged and the result that would follow in each instance, in substance, as follows:

"(A)   If it be assumed that the second line of the Bowling-Pennington survey should read 52 poles instead of 25 poles then that survey would run with the William Bowling survey and the Ben Bowling survey would lie within the Bowling-Pennington boundary and plaintiff would be entitled to recover.

"(B)   If the distance of the 47th line of the William Bowling survey be assumed to read as 25 poles instead of 52 poles then the lines of the two surveys would run together but the Ben Bowling survey would lie within the William Bowling boundary and plaintiff's alleged cause of action would fail.

"(C)   If both the William Bowling and the Bowling-Pennington boundaries are run as certificates and patents read then there will be a space between the two boundaries in which the Ben Bowling survey will be included and plaintiff will lose."

It will be noted that in the parallel columns of the calls in the two older surveys the same natural objects are designated as corners, and, but for the fact that the beginning corner of the Bowling-Pennington patent still remains and is recognized by all parties, and evidence that three other of the natural objects called for in the survey still remain, we might agree with counsel for appellees that one of the assumptions mentioned is just as consistent as the others.   On this question counsel for appellees says:

"This matter of Bowling and Pennington's calling for corner trees similar to those called for in the William Bowling boundary is apparently the hardest nut that appellees have to crack."

Both the Bowling-Pennington patent and certificate of survey call to begin "On corner to the 2500 acres survey made by William Bowling," and, except as hereinbefore indicated, the calls are identical.   Furthermore, the contour of the two plats on file in the land office clearly disclose the intention of the surveyor to make the first 14 lines of the Bowling-Pennington survey coincide with lines of the senior patent.   This, coupled with evi-

dence as to marked corners still remaining in the lines as claimed by appellants, leaves no escape from the conclusion that the second call of the Bowling-Pennington survey was meant to read 52 poles instead of 25 poles, thereby corresponding with the forty-seventh line in the grant to William Bowling. It is evident that in making the survey the surveyor had before him the William Bowling survey and was attempting to follow it in giving the calls for the first fifteen lines.

As pointed out in the former opinion, the earlier deeds in appellant's chain of title follow the description given in the patent, but in 1891, in a deed from Elihu Pennington, one of the patentees to Jess Barger, the call in question was made to read "N 63½ E 52 poles to a point where formerly stood a beech," thus making it conform in distance to the corresponding call in the William Bowling survey and patent, and later deeds described the boundary by reference to the Barger deed.

Having reached the conclusion that there is a mistake in the second call of the Bowling-Pennington patent, and that the correct distance of the line is 52 poles, it follows that lands claimed by appellee Ben Bowling under his junior patent are included in the boundary of appellant, and it is therefore entitled to the relief sought. The opinion on former appeal and cases therein cited are ample authority for holding that correction of mistake in boundary may be made without reforming deeds or patent.

Reversed, with directions to enter judgment in conformity with this opinion.